

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 23, 1959    *overruled by C-376*

Honorable Doug Crouch
District Attorney
Tarrant County Courthouse
Fort Worth, Texas

Opinion No. WW-579

Re: May the Commissioners'
Court of Tarrant County
in submitting to compe-
titive bidding a pro-
posed contract calling
for an expenditure of
$2,000 or more for the
purchase of equipment
or machinery specify
the manufacturer or
brand of the equipment
or machinery sought to
be bid upon, or embody
in the specifications
limitations which would
restrict the number of
bidders to one.

Dear Mr. Crouch:

In a recent letter from your predecessor the fol-
lowing questions were propounded to this office for an
opinion:

"'May the Commissioners Court of Tarrant
County, in submitting to competitive bidding
a proposed contract calling for the expendi-
ture of $2,000 or more for the purchase of
equipment or machinery, specify the manufacturer
or brand of the equipment or machinery sought
to be bid upon.'"

In a subsequent letter from your office the follow-
ing additional facts were secured. We quote from your letter
in part, as follows:

"We have requested additional facts from
the requesting agency, in conformity with your
request to the purchasing agent as:

"one 1959, Chevrolet, station wagon,
eight passenger capacity; with spare
wheel, spare tire, with customary

warranty and service guarantee.

"In this case, there would be three or four firms in the local area which could supply the vehicle and enter a bid. Needless to say, there would be many other dealers who could and would bid on such a request were it not for the specification of the manufacturer, to wit: 'Chevrolet.' It is probably common knowledge that Ford, Plymouth, and other vehicles would be almost identical with the Chevrolet in construction, quality, and performance.

"The second type of equipment sought to be purchased is not described by manufacturer's name or trade name, however the limitations embodied in the specifications effectively limit the prospective bidders to a single supplier, as follows:

"1 Motor Grader with all wheel drive, all wheel steer, 6 cyl. Diesel engine, at least 81 H.P. Hydraulic controls throughout 6 speeds forward and 2 reverse, electric starter high 11 ft. . full reversible, 12' x 5/8" blade with RH and LH straight 6" end boots, hydraulic brakes, muffler, horn, thermostat, 1200 x 24-8 ply tires, low pressure with regular tubes, sure grip tread, enclosed cab, 11 tooth scarifier.

"We are advised that there is but one manufacturer of a motor grader 'with all wheel drive' as described, and there could only be one bidder on the above equipment. We are told, also that the capabilities of this equipment could be duplicated in all respects by a number of other motor graders on the market, but which do not possess the all wheel drive feature. Thus, it appears that the artificial restriction in the above specification limits prospective bidders to the single dealer who distributes the equipment described."

It is noted that competitive bidding is required by the provisions of Section 2 and 2b of Article 2368a of Vernon's Civil Statutes, which is as follows:

"Section 2. No county, acting through
its Commissioners Court, and no city in this
State shall hereafter make any contract calling
for or requiring the expenditure or payment of
Two Thousand ($2,000.00) Dollars or more out of
any fund or funds of any city or county or sub-
division of any county creating or imposing an
obligation or liability of any nature or char-
acter upon such county or any subdivision of
such county, or upon such city, without first
submitting such proposed contract to competitive
bids. . . .

"Section 2b. Contracts for the purchase of
machinery for the construction and/or maintenance
of roads and/or streets, may be made by the govern-
ing bodies of all counties and cities within the
State in accordance with the provisions of this
Section. The order for purchase and notice for
bids shall provide full specification of the
machinery desired and contracts for the purchase
thereof shall be let to the lowest and best bid-
der."

Therefore, the question is whether the "competi-
tive bidding" requirement is satisfied in a situation where
the terms of the specifications of the machinery or equipment
sought, call for a particular brand or manufacturer, or have
the effect of limiting the number of bidders to one.
Sterrett v. Bell, 240 S.W. 2d 516, contains a good definition
of the term "competitive bidding":

"'Competitive bidding' requires due adver-
tisement, giving opportunity to bid, and contem-
plates a bidding on the same undertaking upon
each of the same material items covered by the
contract;upon the same thing. It requires that
all bidders be placed upon the same plane of
equality and that they each bid upon the same
terms and conditions involved in all the items
and parts of the contract, and that the proposal
specify as to all bids the same, or substantially
similar specifications. Its purpose is to stimu-
late competition, prevent favoritism and secure
the best work and materials at the lowest practi-
cable price, for the best interests and benefit
of the taxpayers and property owners. There can
be no competitive bidding in a legal sense where

the terms of the letting of the contract pre-
vent or restrict competition, favor a contractor
or material man, or increase the cost of the
work or of the materials or other items going
into the project."

Another lucid definition and explanation of "com-
petitive bidding" is found in 10 McQuillan, Municipal
Corporations, 3rd Edition, Section 29.30:

". . . No scheme or device promotive of
favoritism or unfairness or which imposes
limitations, not applicable to bidders alike,
will be tolerated . . ."

We shall begin with a consideration of your first
question, i.e. whether the Commissioners' Court may specify
the particular brand or manufacturer of the equipment or
machinery sought.

Two lines of authority have been developed on this
point--the Michigan rule and the Wisconsin rule. Hobart v.
City of Detroit, 17 Mich. 246, 97 Am.Dec. 185, announces
the liberal Michigan rule. Here, the City of Detroit, under
a city ordinance which required competitive bidding, adver-
tised for bids for a paving contract, specifying the patented
process to be used--Nicholson. The right to lay this type of
pavement in Detroit was owned exclusively by one firm, who
submitted a bid and to whom the contract was let. A taxpayer
sued the City to enjoin the collection of a paving assessment
levied upon his property as a result of this contract, upon
the theory that the contract was void for lack of competitive
bidding. The Supreme Court of Michigan in 1868 held against
him in a well-reasoned opinion. The Court said that in many
cases the nature of the work is so complicated or expensive
that there would be only one or two in a position to submit a
bid, and in the event that only one such person did submit a
bid, the City could accept it and let the contract. In this
situation the Courts could not declare such a contract void
simply because no benefits accrued by the application of the
rule requiring competitive bidding, and neither does the fact
that such a result is inevitable from the beginning--only one
possible bidder and no possibility of the accrual of benefits
from competitive bidding--render the contract capable of being
declared void by the Courts. The Court also said that a
strict application of the competitive bidding requirement
would result in allowing a monopoly in regard to any necessary
article to suspend necessary and urgent public works. It was
further stated that just because there is a monopoly of a
certain article, that does not preclude competitive bidding,

because others may bid and take the risks of securing the right of using the invention--the right being a marketable item itself, i.e., that more than one bid is possible. The Court would not construe the ordinance so as to preclude the use of new inventions or processes.

The following year the Supreme Court of Wisconsin adopted the opposite view in a case where the facts were similar to the Michigan case. (Dean v. Charlton, 23 Wis. 590 and 99 Am.Dec. 205)

This problem has been presented to the Courts of Texas only once. In that case, Vilbig Bros. v. City of Dallas, 91 S.W. 2d 336, the City of Dallas, pursuant to a city ordinance which required competitive bidding, advertised for bids in which it was specified that bids may be submitted in accordance with any one of five alternate methods of paving. The list included three patented processes and two non-patented processes. In an opinion written by the Commission of Appeals and adopted by the Supreme Court, it was held that these specifications were not violative of the "competitive bidding" requirement. The Court cited Hobart v. City of Detroit, supra, with apparent approval, and quoted 3 McQuillan Municipal Corporations, 2d Edition, Section 1299, as follows:

"... Although the power to specify a patented article or process under laws requiring competitive bidding is denied, as a general proposition, in a number of jurisdictions, the broad proposition that a patented article or process may be specified under the requirement of competitive bidding is generally sustained and this appears to be the better rule. Therefore, it is 'generally held' that if all the competition is permitted of which the situation allows, a patented article or process may be specified.' (Emphasis our's).

"'The true reason, it is submitted, for the rule upholding municipal authorities in specifying patented material or articles is that to hold otherwise would defeat the very purpose of the legislative provisions requiring contracts to be let to the lowest responsible bidder after advertisement. The purpose of these provisions is to protect the public

interests. They do this by requiring bids to be advertised for and the contract to be let to the lowest and best, or lowest responsible, bidder. But this specific requirement is only incidental to the main purpose of protecting the public interests by securing the best advantages in the way of material and supplies at the lowest practical price. The authorities may, however, protect the interests of the municipality by refusing to contract for the thing patented if the price asked therefor is unreasonable or prohibitive, and if there is any fraud practiced it will vitiate the contract the same as it will a contract for an unpatented article. Consequently, in promoting and protecting the best interests of the municipality, it is necessary that the corporate authorities be permitted to specify patented materials or articles when it is clearly to the public interest to do so, after carefully considering the servicability and cost of the material or article for which the contract is made. Then, too, it cannot be presumed that a provision to secure competitive bidding was intended to apply where competitive bidding on the thing required is impossible.'"

Subsequently, upon a Motion for Rehearing, 96 S.W. 2d 229, the Supreme Court wrote another opinion holding that competition was not destroyed under the facts of that case, but affirmatively withheld any complete discussions of the right of the city to specify patented articles.

It should be noted at this point that the Supreme Court in its final effort with respect to this case, diluted and "watered down" the scope and effect of the original opinion of the Commission of Appeals which they had adopted at first, and restricted the application of the holding only to the facts of that case. We cite and discuss this case not as authority that the Commissioners' Court may specify a patented article, but only to show that the Supreme Court, in its original opinion, definitely declared the Texas law as regards this proposition, to be in line with the Michigan rule, and that even though the last expression of the Court on the case does not lend much support to the proposition, but reaches its conclusion in another manner, both opinions, at the very least, manifest the Court's tendency toward a more relaxed rule as opposed to a strict application of the Wisconsin rule.

Even those Courts which have favored the narrow and

strict Wisconsin rule have seen fit to make exceptions and broaden it considerably. The Kentucky Court, in City of Springfield v. Haydon, 288 S.W. 337, allowed the specification of a patented paving process where the contract as a whole called for labor and materials to be used in addition to that which was patented. Another inroad was made where it was shown that the owner of a patent would sell the right to use the patented article to others.

The most pertinent such exception made by those Courts which have professed to adhere to the Wisconsin rule is most adequately expressed by quoting a paragraph of such Section 1299 of McQuillan, Municipal Corporations, which immediately follows that part of Section 1299 which the Commission of Appeals quoted in the Vilbig case.

"In those jurisdictions where the right to specify a patented article is prohibited, it is generally held that the rule does not apply to contracts other than those for public improvements, and hence does not apply to such contracts as those for lighting streets, purchase of a fire engine, or a contract for the destruction of garbage; i.e. where the expense of the improvement is not assessed on the property benefited thereby that is payable out of the municipal funds . . ."

So, even if the Texas Courts should feel constrained to accept the restricted Wisconsin rule to remain in step with the rest of the Courts who follow that rule, the last-mentioned exception would be made, which resolves our question and permits the specification of a brand name or patented article regarding a county automobile.

Under the facts of your first question concerning the specification of a 1959 Chevrolet Station Wagon, it is the opinion of this office that the "competitive bidding" requirement will not have been violated, either under the Michigan rule or the Wisconsin rule with its exception. Further credence is given this result in this case because there is the actual presence of competition by reason of the fact, according to your last letter, that there are at least four prospective bidders--if not more, for; it is not inconceivable that dealers of Chevrolet products in the surrounding area might be interested in submitting bids on this proposal.

10 McQuillan, Municipal Corporation, 3rd Edition,

Section 29.42 is substantially the same as 3 McQuillan, Municipal Corporation, 2d Edition, Section 1299 which the Commission of Appeals quoted in its opinion, (supra). However, another phrase is added to the last sentence of the first paragraph (the underlined portion of the quotation, supra) so as to cause the last sentence to read as follows:

> "Therefore, it is generally held that if all the competition is permitted of which the situation allows, a patented article or process may be specified, and in the absence of bad faith, the motive of a city counsel in so doing will not be inquired into.  . . . "

We must therefore hasten to add, however, that our conclusion presupposes that the Commissioners' Court acts in good faith, has sufficient justification and does not abuse its discretion, in any way, in its specification of the brand or manufacturer of the vehicle desired.

With respect to your second question regarding the terms of the specifications for a motor grader, the Vilbig case along with the case, Hayden v. Dallas County, 143 S.W. 2d 990, holds that competitive bidding is present even though only one bid is submitted to the proposal, or even though there is only one company which is in a position to submit a bid to that proposal.

Therefore, in line with these cases, it is our opinion that the specifications which you have related to us regarding the motor grader, which have the effect of excluding all bidders except one dealer, meet the requirements of competitive bidding. Certainly it seems proper that the Commissioners' Court should be allowed to do indirectly which they may do directly; i.e. to in effect specify a particular manufacturer or brand, without so doing by name.

Again, however, we reach this conclusion, presupposing that the Commissioners' Court did not abuse its discretion in any manner and that there was sufficient justification in their inclusion in the specifications of the particular attribute of the piece of equipment which causes the result that only one dealer has the product to fulfill the specifications."

### SUMMARY

It is permissible for the Commissioners'
Court of Tarrant County in submitting to
competitive bidding a proposed contract
calling for expenditure of $2,000 or more
for the purchase of an automobile to
specify the manufacturer or brand of the
particular equipment or machinery sought
to be bid upon or embody in the specifi-
cations provisions which limit the number
or prospective bidders on a road grader
to one, where the Commissioners' Court has
not abused its discretion in any manner and
where there is sufficient justification to
prefer one brand over the other.

Very truly yours,

WILL WILSON
Attorney General of Texas

By John L. Estes
John L. Estes
Assistant

JLE:me:mg

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Leonard Passmore
C. Dean Davis
Henry G. Braswell
Marvin H. Brown, Jr.
Marvin Sentell

REVIEWED FOR THE ATTORNEY GENERAL
By: W. V. Geppert